IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARY BRINK, ) | Civil No. 10-6020-JE |
| ) | |
| Plaintiff, ) | FINDINGS AND |
| ) | RECOMMENDATION |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Alan Stuart Graf
Attorney at Law
316 Second Road
Summertown, Tennessee 38483

Attorney for Plaintiff


Dwight C. Holton, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Daphne Banay
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

       Plaintiff Mary Brink brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her applications for Social Security Disability Insurance Benefits.  Plaintiff seeks an

Order reversing the decision of the Commissioner and remanding this action to the Social

Security Administration (the Agency) for an award of benefits.

       For the reasons set out below, the action should be remanded for further proceedings.


**<u>Procedural Background</u>**

       Plaintiff filed an application for Disability Insurance Benefits on August 1, 2005,

alleging that she had been disabled since January 14, 2005.  After plaintiff's application was

denied initially and upon reconsideration, plaintiff timely requested a hearing before an

Administrative Law Judge (ALJ).

       ALJ Jean Kingrey held three hearings, the last of which was conducted on April 16,

2008.  In a decision dated May 28, 2008, ALJ Kingrey found that plaintiff was not disabled.

       Plaintiff timely appealed that decision by seeking review by the Appeals Council.

Plaintiff subsequently retained new counsel, who requested and was granted the opportunity

to submit "new and material" evidence supporting plaintiff's claim.  Counsel submitted

additional material for the Appeals Council's consideration, including a psychological

evaluation by James Powell, Psy.D., dated November 20, 2008, and record from the Curry County Health Department dated April 21, 2009, through May 21, 2009.

In a decision dated November 13, 2009, the Appeals Council denied plaintiff's request for review.  In that decision, the Appeals Council noted that it had considered the additional material submitted on plaintiff's behalf, and had "found that this information does not provide a basis for changing the Administrative Law Judge's decision."  With the Appeals Council's denial of plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner.  Plaintiff brought the present action to challenge that decision.

## **Factual Background**

Plaintiff was born on November 8, 1958, and was 49 years old at the time of the final hearing before the ALJ.  She completed 9th grade, and has past relevant work experience as a bartender.

Plaintiff alleges that she has been disabled since January 14, 2005, because of an enlarged heart, high blood pressure, arthritis, extreme exhaustion, shortness of breath, and panic attacks.

## **Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The

Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

### Medical Record

The parties have not set out plaintiff's medical history in detail, but instead have addressed the medical record only in the context of their arguments.  I will do likewise.

### ALJ's Decision

At the first step of her disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on January 14, 2005.

At the second step, the ALJ found that plaintiff's obesity, hypertension, bilateral carpal tunnel syndrome, and degenerative facet disease at L4-S1 were severe impairments.

At the third step of her analysis, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments set out in the Listing of Impairments, 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1520(d).

The ALJ next evaluated plaintiff's residual functional capacity (RFC).  She found that plaintiff retained the functional capacity required to perform light work, except that she was

limited to occasional pushing and pulling with her arms, and could do no crawling.  In

reaching this conclusion, the ALJ found that plaintiff's complaints were "out of proportion

with the various diagnostic and evaluation findings in the evidence of record."

At the fourth step, the ALJ found that plaintiff was not disabled because she could

perform her past relevant work as a bartender as that work was generally performed in the

national economy.

Having concluded plaintiff could perform her past relevant work, the ALJ did not

proceed to step five, but instead found that plaintiff was not disabled within the meaning of

the Act at step four.


## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted

or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her

disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

(1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan,

924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record as a

whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." <u>Andrews</u>, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it

supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771,

772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if

"the evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at

1039-40.

**<u>Discussion</u>**

Plaintiff contends that this action should be remanded to the Agency for an award of

benefits based upon the assessment of James Powell, Psy.D., which was submitted to the

Appeals Council after the ALJ rendered her unfavorable decision; and because the ALJ

provided insufficient reasons for rejecting Dr. Nolan's opinion, erred in rejecting lay witness

statements, failed to provide clear and convincing reasons for discrediting plaintiff's

testimony, and improperly concluded that plaintiff could perform her past relevant work.

1. <u>Dr. Powell's  Evaluation</u>

On November 20, 2008–nearly six months after the ALJ had issued an unfavorable

decision–Dr. James Powell, Psy.D., performed a psychological evaluation.  Dr. Powell

conducted an interview, reviewed medical records, and administered several tests.

Dr. Powell reported plaintiff's description of her life history and then-current

symptoms and condition.   Plaintiff told Dr. Powell that her sleep patterns varied widely, and

that she sometimes slept for 16 hours and other times slept for only two hours.  Plaintiff

reported that she left her home no more than two or three times a month, and that she tried

to do at least one chore, such as washing dishes, each day.  She described her childhood as

bizarre, and said that she had lived on the streets for a time.  Plaintiff reported that her

biological mother had shot herself when plaintiff was 13 years old, that she had spent much

time in foster care, and that she had been expelled from school for being "mentally insane

and dangerous."

In his summary of the Symptom Checklist-90, Powell reported that there was

An extremely high level of somatization in the profile. Levels of obsessive-
compulsive symptoms were in the clinical range.  The level of depression
was reported to be manifestly elevated and clinical in nature.  There was an
extremely high level of anxiety in the profile and also high levels of phobic
anxiety present.  There also were significant levels of paranoid ideation,
with evidence of suspicion, mistrust, hostility, and projection noted in the
profile, and there was evidence of above-average degree of social alienation.
With regard to the individual items, Ms. Brink reported being "extremely"
distressed by symptoms that included trouble remembering things, pains in
the heart and chest, feeling low in energy or slowed down, suddenly scared
for no reason, feeling no interest in things, having her heart pounding or
racing, feeling weak in parts of her body, having sleep that is restless or
disturbed, and feeling that everything is an effort.  She reported being "quite
a bit" distressed by symptoms that included a multitude of somatic symptoms
that included pain in her lower back, nausea, and soreness in her muscles.
These symptoms included having to avoid certain things, places or activities
because they frighten her.

Dr. Powell diagnosed Major depressive disorder, recurrent, moderate; and Anxiety

disorder NOS.  He rated plaintiff's Global Assessment of Functioning (GAF) score at 44, a

level that indicates "serious symptoms . . . and/or serious impairment in social, occupational,

or school functioning . . . ."  Diagnostic and Statistical Manual of Mental Disorders

(DSM-IV-TR), 4th ed. Text revision, (2000), at 34.  Dr. Powell opined that "there is also a

marked level of impairment in the area of Ms. Brink's ability to manage activities of daily

living," and that "the duration of rehabilitation to the point that Ms. Brink would be able to

maintain employment will be at least a period of 12 months."  He considered her "prognosis"

for being able to maintain employment in the future as "guarded . . . in light of her age,

functional limitations associated with both psychological and medical conditions, and not

having educational credentials."  In his Mental Residual Function Capacity Report,

Dr. Powell indicated that plaintiff was markedly limited in her ability to carry out detailed

instructions, perform activities within a schedule, complete a normal workday, and set

realistic goals.

Plaintiff contends that Dr. Powell's assessment must be accepted because it was not

controverted, that his opinion establishes that plaintiff is disabled, and that the Appeals

Council's decision not to remand the action after considering the evidence means that the

Commissioner considers the record to be complete.  In support of these assertions, plaintiff

cites the Ninth Circuit's decision in Ramirez v. Shalala, 18 F.3d 1449 (9th Cir. 1993), to

remand an action for an award of benefits under what plaintiff characterizes as similar

circumstances.  However, the present circumstances at issue in the present action differ in

one important respect from those presented in Ramirez.  There, in remanding for an award of

benefits after the Appeals Council had considered evidence submitted following a hearing,

the court noted that, where the record was complete, and establishes disability, the Court of

Appeals "award[s] benefits to the claimant."  Id. At 1455.  However, I find it significant that

the court emphasized that there was "no substantial evidence" contrary to evidence that the

plaintiff "exhibited the symptoms of a person suffering the required signs of diagnosis"

required to establish disability.

Here, the court is presented with a similar procedural situation, but a different factual

one.  It appears that, in the absence of contrary evidence and assuming that it described

plaintiff's condition at the time of the ALJ's decision, Dr. Powell's assessment would

establish that plaintiff is disabled.  However, here there is substantial evidence supporting the

FINDINGS AND RECOMMENDATION - 9

conclusion that plaintiff's mental impairments are less serious than Dr. Powell opined, and his assessment was made nearly six months after the ALJ had issued her decision. At the request of the Agency, Dr. D. RoseMarie Reynolds interviewed plaintiff, reviewed her records, and conducted a mental status examination in February, 2006. Dr. Reynolds' report describes far less significant mental impairments than are reflected in the report prepared by Dr. Powell after the ALJ had issued her unfavorable decision. Dr. Reynolds diagnosed a Depressive Disorder, NOS with anxiety, and rated plaintiff's GAF at 70, a score that would indicate a far less serious level of impairment than that assessed by Dr. Powell. Dr. Reynolds reported that plaintiff could understand and remember instructions, could sustain concentration and attention and persist, could engage in appropriate social interaction, and seemed "to be functioning and coping with her alleged fatigue." She added that her report reflected plaintiff's condition at the time of the evaluation and did "not necessarily reflect the diagnosis or condition at any subsequent time."

The parties disagree as to the action that is appropriate in light of Dr. Powell's assessment, and the Appeals Council's consideration of that assessment and denial of plaintiff's request for review. They appear to agree, however, that the court can remand the action for further proceedings. The Commissioner argues that the district court cannot reverse and remand for an award of benefits "based on evidence the ALJ did not have an opportunity to review." The Commissioner contends that "if this Court finds this evidence new and material, it may remand this case for further administrative proceedings." Plaintiff contends that the district court "should credit Dr. Powell's opinion and use its discretion to direct payment of benefits, as a remand for further proceedings would serve no useful purpose."

Based upon my review of the medical record and the parties' contentions, I conclude that the action should be remanded to allow an ALJ to consider the significance of Dr. Powell's report.  Here, unlike in <u>Ramirez</u>, the record includes substantial evidence supporting the conclusion that plaintiff was not disabled during the time relevant to the ALJ's decision.  Ordinarily, the ALJ is responsible for resolving conflicts in the medical evidence, and resolving ambiguities.  <u>E.g.</u>, <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).  In light of conflicting assessments of plaintiff's mental status, and uncertainty as to whether Dr. Powell's post-decision assessment accurately reflected plaintiff's condition at the time of the ALJ's decision, this action should be remanded to the Agency for consideration of Dr. Powell's evaluation, and any other proceedings deemed necessary for an accurate assessment of plaintiff's condition during the relevant period.  The significance of and weight that should be given to Dr. Powell's evaluation is, in the first instance, a matter for an ALJ.

2. <u>Dr. Nolan's Opinion</u>

On November 26, 2005, at the request of the Agency, Raymond Nolan, M.D., performed a physical exam of plaintiff.  Dr. Nolan assessed bilateral carpal tunnel syndrome, chronic neck pain syndrome, peripheral neuropathy, and diffuse mild arthralgias.  He noted that plaintiff should avoid frequent repetitive hand/wrist activity and frequent pushing and pulling involving her upper extremities.  Dr. Nolan indicated that plaintiff "should probably" avoid lifting and carrying more than 20 pounds frequently or 30 pounds occasionally.  He also stated that plaintiff had "no difficulty with communication skills," and should be able to sit for at least 6 hours in an 8-hour day and stand/walk for at least 4 hours in an 8-hour day "with opportunity for change as needed for comfort."

Dr. Nolan reported that his testing revealed positive Tinel's bilaterally and positive Phalen's bilaterally in plaintiff's wrists.[1]  He found that plaintiff's range of finger motion was normal, that plaintiff could make a full fist, and that plaintiff had no joint deformities, synovial thickening, swelling, or erythema, and no thenar atrophy.  Dr. Nolan reported that plaintiff had normal grip strength bilaterally, and 4/5 bilateral weakness involving the extensor policis brevis.

The ALJ accommodated Dr. Nolan's findings of muscle weakness by limiting plaintiff to occasional activities requiring pushing and pulling.  Based upon the opinion of a DDS nonexamining Agency physician, the ALJ rejected Dr. Nolan's opinion that plaintiff needed to avoid repetitive hand/wrist motion.  The ALJ interpreted the Agency physician's opinion as a determination that there were no significant findings that would require these limitations.  She also rejected Dr. Nolan's opinion as to plaintiff's manipulative limitations on the grounds that the DDS review of the full record showed no history of any treatment related to carpal tunnel syndrome, and because diagnostic studies of plaintiff's hands were normal.  The Commissioner acknowledges that the ALJ erred in stating that diagnostic studies were normal, because Dr. Nolan had found Tinel's positive bilaterally and Phalen's positive bilaterally in plaintiff's wrists.  However, he contends that this error was harmless "because it did not affect the result in this case," and argues that the ALJ provided other, valid reasons to reject Dr. Nolan's opinion, which are noted above.

Plaintiff contends that the ALJ's error here was not harmless, because the taproom attendant/bar keeper position that the ALJ found she could perform required frequent reaching and handling.  Plaintiff also contends that the ALJ could not rely on the conclusions

---

[1]These are maneuvers used to diagnose carpal tunnel syndrome.

of a non-examining physician which contradicted the opinions of an examining physician.

She also asserts that the issue of what jobs would be eliminated by her limitation in repetitive

hand/wrist activity "needs further development."

I agree.  The opinions of examining physicians are entitled to greater weight than the

opinions of non-examining physicians  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990),

and "the opinion of a nonexamining physician cannot by itself constitute substantial evidence

that justifies the rejection of the opinion of . . . an examining physician."  Lester v. Chater,

81 F.3d  821, 830-31 (9th Cir. 1995).  The ALJ did not provide an adequate basis for failing to

include the limitation on hand and wrist activity assessed by Dr. Nolan, and it is not clear that

his error was harmless in light of the conclusion that plaintiff could perform the duties of a

taproom attendant.  On remand, this error should be addressed, and the effects of the

limitations that Dr. Nolan found in plaintiff's ability to use her wrists and hands should be

considered.

3. Lay Witnesses

Three lay witnesses submitted statements supporting the conclusion that plaintiff was

severely impaired.  The ALJ thoroughly summarized this evidence, and gave these statements

"little weight" because "the overall record . . . fails to corroborate any significant objective

findings that would explain or support the reported limitations or preclude all jobs in the

workforce."  She added that, "as to the hands . . .recent diagnostic studies . . . returned

unremarkable . . . ."

Plaintiff contends that the ALJ did not provide adequate reasons for rejecting the

evidence provided by the lay witnesses.  I agree.  An ALJ must provide a "germane" reason

for rejecting the statements of a lay witness.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  As plaintiff correctly notes, Dr. Nolan's examination provided objective medical evidence that was consistent with lay statements concerning plaintiff's impaired ability to use her hands.

The Commissioner concedes that the ALJ erred in rejecting the statements of the lay witnesses as unsupported by any medical evidence.  The Commissioner argues that this error was harmless, however, because on the same day of plaintiff's alleged onset of disability, plaintiff's treating physician released plaintiff to regular duty.  The Commissioner notes that the failure to properly address lay testimony is deemed harmless if no reasonable ALJ who fairly credited the testimony could have reached a different conclusion, Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006), and contends that, in light of that release, the harmless error requirement is satisfied.

As noted above, this action should be remanded to address the significance of Dr. Powell's evaluation, and to address the significance of Dr. Nolan's opinion concerning the limitations on plaintiff's use of her hands and wrists.  Under these circumstances, I conclude that the ALJ should also address the lay witness statements again on remand, and consider those statements in light of Dr. Powell's assessment and Dr. Nolan's findings.

 4. Plaintiff's Credibility

As noted above, in evaluating plaintiff's residual functional capacity, the ALJ found that plaintiff's complaints were "out of proportion with the various diagnostic and evaluation findings in the evidence of record."

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies or contradictions between the claimant's complaints and his activities of daily living. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ here was required to provide clear and convincing reasons for discounting plaintiff's credibility, because there was no affirmative evidence of malingering. The ALJ did not explicitly state that she was discounting plaintiff's credibility for any reason, but

instead simply cited "inconsistencies in the record," and generally asserted that there were no

"significant objective findings" indicating that plaintiff could not sustain light exertion level

work,  that no "treating source" had "endorsed" plaintiff's inability to sustain competitive

employment, and that plaintiff's "subjective complaints" were "out of proportion" to the

medical record.  The specific "inconsistency" the ALJ cited was the disparity between

plaintiff's testimony that she quit work in January, 2005, based upon Dr. Druzdel's

recommendation, and records indicating that Dr. Druzdel in fact released plaintiff to return to

work on January 14, 2005, and did not recommend that she quit her work until two months

later.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for

discounting her credibility.  I agree.  The two-month disparity in dates noted above is of

limited significance in light of medical evidence that plaintiff had a very poor memory,

the difference in dates is not great, and the significant amount of time that passed between

those events and plaintiff's testimony concerning them.  The other reasons for discounting

plaintiff's credibility which are implied in the ALJ's opinion are too general to be useful, and

are not wholly supported by the record.  The Commissioner has not cited any support for the

ALJ's implication that a determination of disability turns on whether one of claimant's

treating doctors "has endorsed an inability to sustain all competitive employment."  Given

that the ultimate determination of disability is a question for an ALJ, and not for a treating,

examining, or nonexamining doctor, the absence of a treating physician's assertion here

that plaintiff could not sustain any competitive employment means little.  In addition,

Dr. Nolan's objective findings concerning the impairment to plaintiff's hands and wrists

undermines the ALJ's assertion that there was no objective medical evidence supporting plaintiff's complaints.

Where, as here, an ALJ fails to adequately support a credibility determination, the testimony is credited as a matter of law, and the question becomes whether an action should be remanded for an award of benefits, or for further proceedings.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  That question turns on the likely utility of additional proceedings.  Harman, 211 F.3d at 1179.  A reviewing court should remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence were credited.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, outstanding issues discussed above must be resolved before a determination of disability can be made.  Under these circumstances, though the ALJ did not provide adequate reasons for discounting plaintiff's credibility, the action should be remanded to the Agency for further proceedings, including a determination of the significance of Dr. Powell's post-hearing assessment of plaintiff's mental status.  Evaluation of that assessment could also affect the assessment of plaintiff's credibility.


5. Classification of Plaintiff's Past Relevant Work

Plaintiff contends that the ALJ erred in her classification of plaintiff's past relevant work.  She asserts that her "bartender" work required her to perform tasks that were significantly more physically demanding than serving drinks.  Plaintiff contends that her

work "involved moving kegs and cases of beer," which would "take the job out of the light category" of work which the VE testified that plaintiff could perform. She asserts that, if she is limited to light work, she cannot perform this past relevant work.

The parties argue at length as to whether plaintiff's past relevant work was correctly characterized, and the effect of any error in this regard on the accuracy of the ALJ's decision. However, I need not and do not reach this question, because a remand of this action for reevaluation of the issues discussed above will likely render moot any conclusions based upon vocational testimony in plaintiff's earlier hearing. On remand, an ALJ should revisit the vocational question in light of evaluation on the significance and effect of Dr. Powell's evaluation.

### Conclusion

For the reasons set out above, this action should be remanded to the Agency for further proceedings to address the issues discussed above. Those proceeding should address Dr. Powell's evaluation, Dr. Nolan's objective findings, the credibility of lay witnesses, plaintiff's credibility, and vocational issues.

### Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 17 , 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 18

      If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

      DATED this 31st day May, 2011.


/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 19